UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 24-CR-20110-GAYLES(s)

UNITED STATES OF AMERICA

vs.

FAUSTO VILLAR,
        Defendant.
_____/

## STIPULATED FACTUAL PROFFER

Had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

Beginning in 2022, law enforcement began investigating a series of events that were occurring to Victim 1 and her family members as Victim 1 separated from and began divorce proceedings against her husband, Sergio Pino. The investigation revealed that beginning in 2022 and continuing until July 2024, Pino hired two groups of individuals, to carry out arsons, assaults, and attempted murder against Victim 1 and her family members. Specifically, law enforcement learned that Pino hired Fausto VILLAR to recruit at least one other person to surveil and kill Victim 1. VILLAR recruited Avery BIVINS who recruited others.

On June 23, 2024, Victim 1 was returning to her residence in Miami-Dade, Florida, and momentarily idled in her driveway while she waited for the gate on the west side of the house to open. As Victim 1 began to pull into the driveway, she observed a black male (Vernon GREEN), brandishing a firearm and running toward her vehicle. In an attempt to flee, Victim 1 drove into her backyard, scraping the sides of her car continuously honking the horn. The black male pursued her vehicle by foot.

During this time, Victim 1's daughter, was inside Victim 1's residence when she heard a loud

1

crash and a vehicle honking. Victim 1's daughter exited the residence and ran toward the front of the house. As she reached the open gate, Victim 1's daughter noticed a black pickup truck parked on the street. The black male with the firearm, came from the back of the house, ran up behind Victim 1's daughter and pointed a firearm at her head. Victim 1's daughter turned around, saw the black male as he pointed the firearm inches from her face. Victim 1's daughter then ran back toward the exit she came from.

After Victim 1's daughter fled, the black male ran across the yard of Victim 1's residence and entered the passenger side of a black Dodge Ram pickup truck (the "Dodge Ram"). The Dodge Ram then rapidly departed the vicinity. Victim 1's residence and neighbors' residences were equipped with surveillance cameras that captured the incident and the Dodge Ram. Before Victim 1 returned to her residence, video surveillance footage showed the Dodge Ram driving around Victim 1's residence and neighborhood following closely behind a white Tesla (the "Tesla") over the period of several hours. Further analysis of the video surveillance disclosed the Florida license plate DI0RI affixed to the rear of the Tesla. Information obtained from the Florida Department of Highway Safety and Motor Vehicles, driver and vehicle information database ("DAVID") disclosed that the license plate DI0RI is registered to Diori BARNARD.

On June 24, 2024, law enforcement conducted surveillance of BARNARD's residence. Parked outside the house was a white Chevrolet Tahoe, bearing Florida license plate BN50WL. A DAVID query revealed the Tahoe is registered to BARNARD. Upon reviewing license plate reader ("LPR") images, on May 3, 2024, an LPR collected an image of BARNARD's residence that captured the white Tahoe next to a black Dodge Ram with chrome bumpers, similar in description to the Dodge Ram seen in the area of Victim 1's residence on June 23, 2024. In this image, an after-market LED light is visible on the Dodge Ram's front bumper.

2

The afternoon of June 24, 2024, federal agents recovered the Dodge Ram, with Florida license plate BP16UV, abandoned in the vicinity of S.W. 70th Avenue and S.W. 80th Street nearby Victim 1's Residence. Law enforcement observed an after-market LED light affixed to the Dodge Ram's front bumper, in the same place as the one seen on the Dodge Ram at BARNARD's residence. The vehicle identification number ("VIN") associated with the Dodge Ram, 1C6RREBG1MN533057, revealed the vehicle was reported stolen.

Law enforcement queried for stolen vehicles and received an Orange County Sheriff's Department (FL) report stating that the Dodge Ram was stolen in the vicinity of Orlando, Florida, in the early morning hours of March 31, 2024. Also contained in that report, the owner of the Dodge Ram, stated the vehicle can be differentiated from similar models, by an LED strobe light affixed to the front bumper.

Florida License Plate BP16UV, also reported stolen, is associated with a 2013 orange Toyota Corolla. Law enforcement interviewed the owner associated with Florida tag BP16UV. Upon locating the owner, his vehicle, a black Dodge Ram, was parked in the lot with Florida license plate 85BMPA affixed to the rear. The owner acknowledged the current plate on his truck was not his and he had no knowledge of how that plate got on his vehicle.

A license plate reader (LPR) review of Florida plate 85BMPA revealed that on June 19, 2024, at 8:41 pm, a blue Dodge Ram was parked at a Walmart in Miami, Florida. An LPR review also documented a Mazda C-30, parked in the same Walmart at 8:42 pm. A review of the Walmart surveillance footage showed a white Tesla (later confirmed by the Tesla's GPS information to be the Tesla) driving with the Mazda C-30 and pulling up to a blue Dodge Ram.

On June 24, 2024, FBI located and seized the Tesla with the license plate DI0RI affixed to the rear of the vehicle. Pursuant to a warrant, law enforcement extracted footage recorded by the Tesla's

3

onboard computer system, which included multiple cameras capturing exterior footage. Footage from June 8, 2024, revealed the Tesla parked in the driveway of BARNARD's residence. Parked next to the Tesla was a black Dodge Ram with chrome accents and black rims. The Tesla footage showed Clementa JOHNSON as he was getting in and out of the passenger side of the Dodge Ram. Footage from June 20, 2024, at approximately 2:30 pm, revealed JOHNSON entering the driver's side and departing in a light-colored Mazda C-30.

Law enforcement identified JOHNSON's cellular telephone number. After identifying his number, law enforcement determined that JOHNSON had an active player account with Seminole Hard Rock Casino. Surveillance footage from Hard Rock Casino showed that on June 21, 2024, at 8:40 am. JOHNSON arrived alone in a light-colored Mazda C-30, bearing Florida license plate 95BKCV (the "Mazda C-30").

A review of LPR database checks for the Mazda C-30 license plate revealed its location on June 21, 2024, at 7:56 pm, in the vicinity of 6731 Killian Drive, Pinecrest, Florida. The Mazda C-30 was immediately behind the stolen black Dodge Ram which hit the LPR at 7:56 pm. This location is approximately 1.3 miles south of Victim 1's Residence.

Additional LPR records indicate that on June 22, 2024, the Mazda C-30 was recorded by the Monroe County Sheriff's Office, Key Largo South LPR, located immediately over the Route 1 bridge onto Key Largo. In an interview with Victim 1, law enforcement learned that she was at a resort ("Resort") in Key Largo on the evening of June 22, 2024, Pursuant to a warrant of the Dodge Ram law enforcement recovered a Resort valet pass with an arrival date of June 22, 2024, and a departure date of June 26, 2024. Law enforcement reviewed security footage provided by the Resort and observed the Dodge Ram and BARNARD's white Tahoe follow Victim 1 into the Resort's parking area through the Resort's front gate.

4

Historical cellular location data revealed that BARNARD called JOHNSON on the evening of June 22, 2024, while in the vicinity of Victim 1's Residence. On June 23, 2024, prior to driving the Tesla to Victim 1's Residence, BARNARD contacted JOHNSON. BARNARD again contacted JOHNSON upon the Tesla and the Dodge Ram's arrival outside of Victim 1's Residence. JOHNSON, BARNARD, and an additional phone number attributed to GREEN then appear to join a group phone call shortly thereafter while the Dodge Ram and the Tesla are down the street from Victim 1's Residence. JOHNSON's cellular telephone was connecting to cell phone towers in the vicinity of Victim 1's Residence, church, and the Resort consistent with Victim 1's locations at the same time.

On or about July 1, 2024, JOHNSON was arrested and gave a post-*Miranda* statement to law enforcement. JOHNSON stated that BIVINS hired him to recruit several individuals to kill Victim 1. Subsequently, JOHNSON recruited GREEN and BARNARD to kill Victim 1. BIVINS paid JOHNSON U.S. currency as a downpayment for the contract and promised him additional money once completed. BIVINS was hired by Fausto VILLAR, known as "Cuba," who he met in prison.

JOHNSON confirmed that GREEN was an occupant of the Dodge Ram on June 23, 2024. During the interview, law enforcement showed JOHNSON a still photograph from Victim 1's Residence surveillance system during the June 23, 2024 incident. The photograph shown to JOHNSON depicted the armed individual holding a firearm pointed at Victim 1's daughter. JOHNSON identified the gunman from the photograph as GREEN.

A historical cell site warrant also revealed that BARNARD's cellular telephone was in communication with GREEN's cellular telephone approximately 22 times on or about June 23, 2024. JOHNSON's cellular telephone was in communication with GREEN's cellular telephone approximately 2 times on or about June 23, 2024. JOHNSON's cellular telephone also communicated with BIVINS' cellular telephone on June 23, 2024, approximately two minutes after the armed

incident at Victim 1's Residence.

On or about July 12, 2024, law enforcement contacted BIVINS who voluntarily agreed to speak with law enforcement. BIVINS explained that he knew VILLAR as "Cuba" and that they knew each other from state prison. BIVINS stated that VILLAR contacted him saying a wealthy man (later identified as Pino) contracted him to kill his estranged wife (Victim 1). VILLAR asked BIVINS if he knew anybody for the job. BIVINS contacted JOHNSON who contacted BARNARD and GREEN to kill Victim 1.

During subsequent meetings, between VILLAR and BIVINS, BIVINS accepted the murder contract. VILLAR stated that Pino was willing to pay $150,000 for the murder contract's completion. Additionally, VILLAR explained that there would be an additional $150,000 if the contract was carried out without detection. VILLAR also provided two cash payments of $30,000 and $45,000 up front during two separate meetings. VILLAR provided syringes and vials to use during the execution of the murder contract. VILLAR told BIVINS that Victim 1 had to be killed by June 24, 2024, to ensure that she could not make a July 2024 divorce proceeding between her and Pino.

JOHNSON and the others began stalking Victim 1 sometime after June 11, 2024. From June 19 to 23, 2024, JOHNSON and others stalked Victim 1 at several locations over multiple days. After the June 23, 2024, assault with a firearm, JOHNSON contacted BIVINS and stated the job was completed. BIVINS relayed this information to VILLAR. Later that day, VILLAR's cellular device used a tower that services the area of Victim 1's residence.

On or about July 15, 2024, BIVINS voluntarily agreed to conduct a recorded call with VILLAR using his burner telephone number. During the call, VILLAR impressed upon BIVINS that they needed to cease contact and lay low until "the smoke clears." VILLAR implied to BIVINS that he could not get more money from Pino because law enforcement was monitoring Pino. VILLAR

instructed BIVINS to delete his Instagram. VILLAR also instructed BIVINS to make sure that the arrested individuals did not give up BIVINS and VILLAR by making it seem like the robbery was a crime of opportunity.

Immediately after BIVINS and VILLAR's recorded call, law enforcement monitored the pen register trap and trace associated with Pino's known cellular telephone number. Law enforcement observed a What's App call between VILLAR's primary cellular device and Pino that lasted approximately three minutes and fifteen seconds. VILLAR and Pino also exchanged What's App messages during this time. Law enforcement arrested VILLAR and BIVINS the following day.

The parties agree that these facts, which do not include all facts known to the government and Fausto VILLAR, are sufficient to prove that Fausto VILLAR committed the crimes charged in Counts 1, 14, and 16 of the Superseding Indictment.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 6/24/25    By: _____
BRIAN DOBBINS
ASSISTANT UNITED STATES ATTORNEY

Date: 6/24/25    By: _____
for ABBIE D. WAXMAN
ASSISTANT UNITED STATES ATTORNEY

Date: 6/24/25    By: _____
JOSEPH SCHUSTER, ESQ.
ATTORNEY FOR DEFENDANT

Date: 6/24/25    By: _____
FAUSTO VILLAR
DEFENDANT